DETROIT BASEBALL CLUB *v.* PRESTON NATIONAL BANK.

APPEAL FROM JUSTICE'S COURT—EVIDENCE—DEATH OF WITNESS.
    Where a witness in justice's court dies pending an appeal, evi-
    dence of what he testified to before the justice is admissible
    upon the trial at the circuit.

Error to Wayne; Donovan, J.    Submitted June 9,
1897.    Decided June 28, 1897.

*Assumpsit* by the Detroit Baseball Club against the
Preston National Bank to recover a balance of deposit.
From a judgment for plaintiff, defendant brings error.
Affirmed.

*J. G. Dickinson,* for appellant.

*Gray & Gray,* for appellee.

LONG, C. J.    The Detroit Baseball Club had been for
some years engaged in giving exhibitions of baseball
games, and in the fall of 1888, deciding to go out of busi-
ness, made arrangements to wind up its affairs.    James
L. Edson was treasurer and Robert H. Leadley the secre-
tary.    The club's banking was transacted with the Pres-
ton National Bank.    The moneys in bank were deposited
in the name of the club, and checks against the deposit
were signed by Mr. Edson.    The check book was kept at
the office of Mr. Leadley, and he filled out the checks,
whereupon the check book was taken to Mr. Edson,
and the checks signed by him and then issued by Mr.
Leadley.    There was more or less detail in the wind-
ing up of affairs, and not until December, 1889, was the
club quite ready to close all matters.    At a directors'
meeting held in that month, a statement was made show-
ing that there was on hand $7,176.32.    A dividend of
$17.50 a share (\$7,000 in all) was declared.    This left
$176.32 in bank, as claimed by plaintiff.

In 1889, Mr. Leadley became secretary of the Detroit Baseball Association, a new organization, which also kept its account at the Preston National Bank. He remained in that capacity until July 11, 1890, when the association retired from business, and he was employed by the Cleveland Club, whose duties kept him away from Detroit during 1890 and 1891. Some time in 1890 or 1891, Mr. Leadley took the plaintiff's pass book to the bank for balancing. It remained there some time. When, later, he called for the book, the bookkeeper said he could not return it, as some of the vouchers were missing, but stated that the balance was $76.32. Mr. Leadley at once replied that there was a mistake, as his books showed a balance of $176.32. Mr. Gray, who was acting as attorney for the plaintiff, testified that in the spring of 1892 he first learned of the discrepancy, and then went and asked Mr. Lerch, the bookkeeper, what the trouble was; he replied that the book was not written up because certain vouchers could not be found; that, later on, Lerch said he thought the vouchers would be found when the bank moved into the Moffat Block. Both Mr. Leadley and Mr. Gray swear positively that the bank, up to the fall of 1892, made no claim of vouchers returned or account rendered, and that objection was made to the $100 item as soon as attention was called to it.

The first suit was begun against the bank in September, 1892. On account of the serious illness of one of the bank's witnesses, that case, after repeated adjournments, was permitted to go down. Some time elapsed before the institution of the present suit, on account of the absence in Europe of Mr. Edson. In the fall of 1892, shortly after the commencement of the first suit, Mr. Lerch requested permission to examine the books and papers of the club. These records, and also those of the baseball association, were stored in a box at Mr. Leadley's house; and one evening the bank officers opened the box, and found among the papers eight of the missing checks, but not the $100 one in dispute. The explanation of Mr.

Leadley as to these checks is that, after the breaking up of the association, its pass book and checks were returned to him, but he did not examine them, as he knew the association had no balance, and so no necessity existed for verifying the account; that the pass books and checks and other papers and records of both corporations were thrown into the box together, and that possibly the club checks found there were returned with the association checks and pass book; at any rate, he had no actual knowledge of the return of any until that evening. An account stated was made between the parties on January 1, 1890, at which time it was agreed that there was a balance of $648.82 to plaintiff's credit. Sixteen dividend checks drawn in December, and aggregating $472.50, were then unpresented, but were subsequently paid. The bank book was never, later, written up. When, in 1892, the bank began to write it up, only one check ($52.50, paid January 23, 1891) could be found in the bank's possession.

There was no dispute but that the bank paid a $100 check at the time claimed, but Mr. Leadley and Mr. Edson testify such check was not drawn by the Detroit Baseball Club, and that there was no occasion for drawing it, as all the debts had been paid. On the other hand, the bookkeeper of the bank, Mr. Lerch, testified that the check was signed by Mr. Edson. This question was submitted to the jury, and they found that Edson did not sign the check. This must dispose of that question, as there was some evidence to go to the jury upon it. But the bank further contends in its defense that there was an account stated. Mr. Edson and Mr. Leadley both testify that no account was rendered. This question was submitted to the jury under requests tendered by the defendant.

Some special questions are raised by the defense. It is contended that the testimony of Mr. Gray was incompetent, as to what Mr. Edson had testified to. It appears that Mr. Edson was examined as a witness in justice's court. Before the trial in the circuit he died, and Mr. Gray was called to show what Mr. Edson there testified

to.   This was properly permitted, and the testimony by Mr. Gray was positive that Mr. Edson there testified that he did not sign the $100 check, and that no account was ever rendered him by the bank showing the payment of the $100 check.

We have carefully examined this record, and are unable to find any error.   The judgment must be affirmed.

MONTGOMERY and MOORE, JJ., concurred.   GRANT and HOOKER, JJ., did not sit.